FILED
2023 Jul-13  PM 02:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RAYMOND ESTERS, *et al*.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:20-cv-698-AMM** |
| **SERGEANT RYAN** | ) | |
| **STRICKLAND, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case is before the court on: (1) a motion for summary judgment by Defendants Sergeant Ryan Strickland ("Sergeant Strickland"), Deputy Zander T. Patterson ("Deputy Patterson"), Deputy Jordan D. Sands ("Deputy Sands"), Deputy Nicholas P. Talton ("Deputy Talton"), and Deputy Lynn Lloyd ("Deputy Lloyd"), (collectively, "the Defendants"), Doc. 113, and (2) a motion for further discovery by Plaintiffs Raymond Esters and Keyvin Mallard, Doc. 121.[1]

---

[1] Mr. Esters and Mr. Mallard captioned their responsive filing as "Plaintiffs' Opposition To Defendants' Motion For Summary Judgment." Doc. 121 at 1 (emphasis omitted); *see also* Doc. 121-1. The Eleventh Circuit treats a filing under Federal Rule of Civil Procedure 56(d) as a motion for further discovery. *E.g.*, *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1279 (11th Cir. 1998); *accord Garner v. City of Ozark*, 587 F. App'x 515, 518 & n.3 (11th Cir. 2014) (per curiam) (holding that precedent interpreting the former Rule 56(f) applies to the current Rule 56(d)). Accordingly, the court construes the responsive filing as a motion for further discovery under Rule 56(d). *See* Fed. R. Civ. P. 8(e).

For the reasons explained below, the motion for further discovery is **DENIED**. The motion for summary judgment is **GRANTED** as to the claims that arise under federal law. The court declines to exercise supplemental jurisdiction over the state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND

### A. Factual Background

The court's initial order provides that "[a]ll statements of fact, in all sections of the brief, must be supported by specific reference to the CM/ECF document and page number of the evidentiary submission." Doc. 11 at 17. The Defendants did not file a compliant brief. Specifically, the Defendants did not cite to the CM/ECF document and page number for their evidentiary submission. Accordingly, the court was required to search the Defendants' evidentiary submissions to attempt to find the referenced evidence.

Material facts set forth in the parties' statement of material undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or reply of the opposing party. *Id*. at 18–19. When material facts are captured by body camera footage, the court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). For purposes of summary judgment, these are the undisputed material facts:

"On January 21, 2020, [Mr.] Esters and [Mr.] Mallard were traveling in [Mr.] Mallard's vehicle and [Mr.] Esters was driving the vehicle." Doc. 114 ¶ 8; *accord* Doc. 105-1 at 19. Mr. "Mallard possessed a loaded [firearm] on his waist and there was a loaded . . . firearm in" the vehicle "while [Mr.] Esters was driving." Doc. 114 ¶ 10; *accord* Doc. 105-1 at 20–21; Doc. 107-1 at 19. Mr. Esters was driving the vehicle without a driver's license and while in possession of cocaine. Doc. 114 ¶¶ 11–12; *accord* Doc. 107-1 at 15.

"The Defendants worked together . . . on the [Jefferson County] Sheriff's Safe Neighborhood Enforcement Team." Doc. 114 ¶ 13; Doc. 109-1 at 9; Doc. 110-1 at 6–7; Doc. 110-2 at 17; Doc. 111-1 at 7–8; Doc. 111-2 at 6. Because of their role on this team, the Defendants "patrolled all over Jefferson County." Doc. 114 ¶ 14; Doc. 110-1 at 7. At the time of the events giving rise to this action, the Defendants were in three separate patrol vehicles: (1) a vehicle driven by Deputy Talton with Deputy Sands in the passenger seat, (2) a vehicle driven by Deputy Patterson with Deputy Lloyd in the passenger seat, and (3) a vehicle driven by Sergeant Strickland. Doc. 109-1 at 10 (testifying as to the order of the patrol vehicles); Doc. 110-1 at 8 (testifying as to the driver and occupant of Deputy Talton's vehicle); Doc. 111-2 at 9 (testifying as to the driver and occupant of Deputy Patterson's vehicle).

Deputy Talton and Deputy Sands "attempted to make a traffic stop" of the vehicle driven by Mr. Esters. Doc. 114 ¶¶ 17, 21; *accord* Doc. 111-1 at 10–11; Doc. 110-1 at 8. Deputy Talton and Deputy Sands "observ[ed] that [the] vehicle's windows were believed to be in violation of Alabama law." Doc. 114 ¶ 17; *accord* Doc. 111-1 at 10–11; Doc. 110-1 at 8. Specifically, Deputy Talton and Deputy Sands observed that the vehicle had an "illegal window tint." Doc. 114 ¶ 20; *accord* Doc. 111-1 at 10–11; Doc. 110-1 at 8. Deputy Talton further "believed that [the] vehicle was following [another vehicle] too closely." Doc. 114 ¶ 17; *accord* Doc. 111-1 at 10–12.

"Dep[uty] Talton proceeded to make a U-turn to follow behind [the] vehicle" driven by Mr. Esters. Doc. 114 ¶ 21; *accord* Doc. 111-1 at 11. "When Dep[uty] Talton . . . ma[d]e his U-turn, [Mr.] Esters proceeded to cross a double yellow line, pass[ed] the" vehicle he "was previously following to[o] closely . . . and began fleeing at speeds" above the speed limit. Doc. 114 ¶ 22; *accord* Doc. 111-1 at 11; Doc. 110-1 at 9; Doc. 105-1 at 24; *see also* Doc. 110-2 at 29. The Defendants followed in a high-speed pursuit, which pursuit lasted a couple of minutes. Doc. 111-1 at 11; Doc. 110-1 at 9; Doc. 109-1 at 10; *see also* Doc. 108-1 at 218, 00:00–01:32.[2]

---

[2] Hereafter, citations to body camera videos are to the approximate minute of the timestamp on screen as the video plays. When the court's analysis hinges on a specific second of the body camera footage, *see infra* at 27–28, the court cites to the approximate second.

"During the [pursuit], [Mr.] Mallard asked [Mr.] Esters to stop the vehicle, but [Mr.] Esters refused to slow down or stop the vehicle." Doc. 114 ¶ 23; *accord* Doc. 105-1 at 23–24. "During the pursuit, [Mr.] Esters committed numerous other traffic violations, including speeding way above the speed limit, running stop signs and running red lights." Doc. 114 ¶ 24; Doc. 105-1 at 24; Doc. 110-2 at 33. The pursuit concluded when "[t]he vehicle being driven by [Mr.] Esters hit a dip in the road and [Mr.] Esters crashed [the] vehicle into a tree." Doc. 114 ¶ 25; *accord* Doc. 105-1 at 24, 27; Doc. 110-1 at 11; Doc. 110-2 at 33; Doc. 111-1 at 11.

After the crash, a "firearm was fired from within the vehicle through the front windshield." Doc. 114 ¶ 26; *accord* Doc. 107-1 at 16–17; Doc. 110-1 at 11; Doc. 111-1 at 11; *see also* Doc. 108-1 at 218, 01:00–02:00. "Dep[uty] Talton and Dep[uty] Sands both returned fire . . . ." Doc. 114 ¶ 29; *accord* Doc. 107-1 at 16; Doc. 110-1 at 11; Doc. 111-1 at 12; *see also* Doc. 108-1 at 218, 01:00–02:00. "Dep[uty] Talton and Dep[uty] Sands feared for their li[v]e[s] because they believed that [Mr. Esters and Mr. Mallard] were shooting at them . . . ." Doc. 114 ¶ 29; *accord* Doc. 111-1 at 29; Doc. 110-1 at 12, 27, 31–32. Neither Deputy Talton nor Deputy Sands "could . . . determine which individual was firing the gunshots" because of the vehicle's "dark tinted windows," the "timing of the gunshots," and other contemporaneous events. Doc. 114 ¶ 30; *accord* Doc. 111-1 at 11–14; Doc. 110-1 at 12–13.

"After the gunshots were fired from inside [the] vehicle, [Mr.] Esters exited the vehicle . . . and began running behind a building towards the woods." Doc. 114 ¶ 33; *accord* Doc. 107-1 at 26, 29; Doc. 110-1 at 12; Doc. 110-2 at 33–35; Doc. 111-1 at 12; Doc. 111-2 at 11; *see also* Doc. 108-1 at 221, 03:00–04:00. "Dep[uty] Patterson [then] arrived on the scene and encountered [Mr.] Esters running . . ." Doc. 114 ¶ 34; *accord* Doc. 110-2 at 33–35. "Dep[uty] Patterson believed [Mr.] Esters had fired at Dep[uty] Sands and Dep[uty] Talton when they arrived and was still in possession of a gun, so he fired his weapon at [Mr.] Esters." Doc. 114 ¶ 37; *accord* Doc. 110-2 at 33–35. "Dep[uty] Patterson . . . shot [Mr.] Esters once and . . . did not fire his weapon again after [Mr.] Esters went to the ground." Doc. 114 ¶ 39; *accord* Doc. 107-1 at 20; Doc. 110-2 at 33–34; *see also* Doc. 108-1 at 221, 03:00–04:00.

"Only five (5) to eight (8) seconds elapsed from the time gunshots were fired from [the] vehicle [driven by Mr. Esters] until Dep[uty] Patterson fired his weapon at [Mr.] Esters . . . ." Doc. 114 ¶ 40; Doc. 110-2 at 57–59; Doc. 109-1 at 45–47. "All gunshots at the scene of the incident occurred in less than twelve (12) seconds." Doc. 114 ¶ 41; Doc. 190-1 at 46–47; *see also* Doc. 108-1 at 218, 01:00–02:00; *id*. at 221, 03:00–04:00. "S[er]g[ean]t[] Strickland and Dep[uty] Llyod never fired any weapons." Doc. 114 ¶ 31; *accord* Doc. 111-2 at 20; Doc. 109-1 at

10 (testifying that Sergeant Strickland arrived on the scene of the accident as shots were fired); *see also* Doc. 108-1 at 218, 01:00–02:00; *id*. at 221, 03:00–04:00.

"Dep[uty] Talton . . . called for medics after [Mr.] Mallard was placed into handcuffs . . . ." Doc. 114 ¶ 43; Doc. 111-1 at 12; Doc. 110-1 at 13; Doc. 109-1 at 11; *see also* Doc. 108-1 at 218, 03:00–04:00. "Dep[uty] Patterson called for medics as soon as [Mr.] Esters had been placed in handcuffs." Doc. 114 ¶ 42; Doc. 110-2 at 84; Doc. 109-1 at 11; *see also* Doc. 108-1 at 221, 03:00–04:00.

An ambulance transported Mr. Mallard and Mr. Esters from the scene of the accident to UAB Hospital. Doc. 105-1 at 31–32; *see also* Doc. 108-1 at 221, 21:00–25:00; *id*. at 218, 21:00–26:00. Mr. Mallard was treated for a "[d]istal humerus fracture." Doc. 106-1 at 234; *see also* Doc. 105-1 at 25 (testifying that when Mr. Mallard "g[o]t out of the car[,] . . . [his right] arm was broken"). Mr. Esters suffered a "[t]raumatic injury of [his] spinal cord," which injury rendered him paralyzed. Doc. 106-1 at 58; Doc. 107-1 at 43.

### B. Procedural History

This case was filed on May 18, 2020. *See* Doc. 1. On July 24, 2020, the court entered a scheduling order setting a discovery deadline of April 1, 2021, and a dispositive motion deadline of May 3, 2021. *See* Doc. 14. In that scheduling order, the court warned the parties:

**Extensions for the deadlines set to complete all discovery and file dispositive motions will not be granted absent extraordinary**

**cause. In the event extraordinary cause is shown, only one extension will be granted.**

\*\*\*

Absent extraordinary unforeseen circumstances, any motion for an extension of any deadline must be filed three or more days before the deadline sought to be extended. Motions for an extension of time that do not satisfy this requirement will ordinarily be automatically denied. Successive requests for extensions by the same party are disfavored. Any motion to extend the deadline to complete all discovery must state when the moving party first propounded discovery requests and/or noticed depositions and must include any other information that will help the court determine how effectively the parties have used the amount of time originally allowed for discovery.

*Id*. at 1, 3–4 (emphasis in original).

After a series of delays, non-compliant pleadings, and motions to dismiss, *see* Doc. 99 at 2 (summarizing the procedural history), the operative complaint was filed on May 13, 2022, *see* Doc. 61. Sergeant Strickland and former defendants Chief Deputy Willie Hill, Deputy Chief Anthony Pippen, Captain John Mayes, and Lieutenant Frank Belcher moved to dismiss the claims pleaded against them in their supervisory capacity (Counts IV and V), *see* Doc. 73, which motion the court granted, Doc. 81.

Mr. Esters and Mr. Mallard assert the following claims pursuant to 42 U.S.C. § 1983 for the alleged violation of their constitutional rights: excessive force/unreasonable seizure (Count I), substantive due process (Count II), failure to intervene (Count III), deliberate indifference to serious medical needs (Count VI),

8

and equal protection (Count VII). *See generally* Doc. 61. Mr. Esters and Mr. Mallard also assert a state-law claim for the Defendants' allegedly outrageous conduct (Count VIII). *See id.*

Following a status conference and based on a joint proposed revised scheduling order from the parties, *see* Doc. 65, the court entered a revised scheduling order, Doc. 66, and an order setting this case for trial on September 11, 2023, Doc. 67. The revised scheduling order set the following relevant deadlines:

> **Expert Testimony**: Unless modified by stipulation of the parties, the disclosures of expert witnesses—including a complete report under Federal Rule of Civil Procedure 26(a)(2)(B) from any specially retained or employed expert—are due:
>
> From plaintiffs:          by **December 1, 2022**
>
> From defendants:          by **January 3, 2023**
>
> ***
>
> **Deadline:** All discovery must be commenced in time to be completed by **March 31, 2023**.
>
> ***
>
> **DISPOSITIVE MOTIONS**: All potentially dispositive motions and evidentiary submissions upon which a party will rely in support of the motion must be filed no later than **April 14, 2023**.

Doc. 66 at 2–3 (emphasis in original).

On December 29, 2022, the Defendants notified the court that they "ha[d] served" their expert disclosures "on counsel for all parties." Doc. 82 at 2–3; *see also* Doc. 82-1.

On February 10, 2023, Mr. Esters and Mr. Mallard moved this court for a retroactive extension of their expert disclosure deadline. *See* Doc. 84; Doc. 85. At that point, seventy-one days had passed since the deadline for the plaintiffs' expert witness disclosures. *See* Doc. 66 at 2. The court denied the motion because Mr. Esters and Mr. Mallard did not establish the requisite good cause to modify the deadlines in the court's scheduling order. *See* Doc. 87.

Mr. Esters and Mr. Mallard then filed a Motion For Reconsideration Of The Court Order Of February 15, 2023 Denying Extension Of Time For Expert Witness Disclosure, Doc. 88, and an Opposed Motion For A 120-Days Extension Of Time To Complete Discovery, Doc. 89. The court denied both motions. *See* Doc. 99.

The day before the dispositive motion deadline, *see* Doc. 66 at 3, Mr. Esters and Mr. Mallard appealed the court's order denying their motion for reconsideration and motion for an extension of time, *see* Doc. 102. The Defendants moved for summary judgment. Doc. 113. The court ordered the parties to show cause "why the court ha[d] jurisdiction to grant relief while the appeal remain[ed] pending." Doc. 115.

In opposition to the Defendants' motion for summary judgment, Mr. Esters and Mr. Mallard "submit[ted an] . . . [a]ffidavit" from their counsel pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, which affidavit, according to Mr. Esters and Mr. Mallard, "indicat[ed] that [their counsel] c[ould ]not present facts essential to . . . justify [their] opposition to the Defendants' . . . [m]otion for [s]ummary [j]udgment." Doc. 121 at 1; *see also* Doc. 121-1 (the affidavit). And in response to the court's order to show cause, Doc. 115, Mr. Esters and Mr. Mallard moved the court to stay this action, Doc. 116.

The court denied the motion to stay. *See* Doc. 122. The court first observed that "[a]s a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal." *Id.* at 5 (cleaned up). The court concluded that the appeal filed by Mr. Esters and Mr. Mallard did "not divest[ the court] of jurisdiction to enter further orders" because Ms. Esters and Mr. Mallard "appeal[ed] a nonappealable order." *Id.* (cleaned up); *see also id.* at 6–9. Accordingly, Mr. Esters and Mr. Mallard had not presented circumstances which warranted a stay of this case. *Id.* at 9.

On June 1, 2023, the Eleventh Circuit dismissed the appeal *sua sponte* for lack of jurisdiction. *See* Doc. 125. The motion for summary judgment is fully briefed. Doc. 114; Doc. 121; Doc. 124.

## II.     STANDARD OF REVIEW

### A. Rule 56(d)

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The supporting affidavit must "set[] forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l, Inc.*, 157 F.3d at 1280. "Whether to grant or deny a Rule 56([d]) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Id*.

"In qualified immunity cases, the Rule 56([d]) balancing is done with a thumb on the side of the scale weighing against discovery." *Id*. "Qualified immunity provides an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal immunity question." *Id*. (cleaned up). "For that reason, once a defendant raises the [qualified immunity] defense, the trial court must exercise its discretion . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Id*. (cleaned up).

### B. Rule 56(a)

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine dispute" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (cleaned up).  In deciding a motion for summary judgment, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up).

### III.   ANALYSIS

### A. The Rule 56(d) Motion By Mr. Esters and Mr. Mallard

Mr. Esters and Mr. Mallard move for further discovery because they "cannot present facts essential to . . . justify [their] opposition to the Defendants' defenses of qualified immunity" because they "would need to be allowed to utilize their expert witness to refute the qualified immunity defenses of the Defendants." Doc. 121 at 1.

The motion fails for three separate and independent reasons. *First*, Mr. Esters and Mr. Mallard have not asserted their need for further discovery with the requisite degree of specificity. *See* Fed. R. Civ. P. 56(d); *accord Harbert Int'l, Inc.*, 157 F.3d at 1280. To carry their burden, Mr. Esters and Mr. Mallard "cannot rest on vague assertions that additional discovery will produce needed, but unspecified facts, but rather must specifically demonstrate how postponement of a ruling on the motion will enable them, by discovery or other means, to rebut the [Defendants'] showing of the absence of a genuine issue of fact." *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) (cleaned up).

The supporting affidavit from counsel for Mr. Esters and Mr. Mallard asserts "there [are] a multitude of outstanding evidentiary material for which the [c]ourt has disallowed including[,] most saliently[,] the disclosure of the Plaintiff[]s['] expert witness and the[ witness's] report." Doc. 121-1 ¶ 5. Counsel for Mr. Esters and Mr. Mallard further testifies that "said expert witness report, testimony, and opinions would be extremely important based on the salient facts of this case" because the alleged "excessive use of force employed by the Defendants in arresting" Mr. Esters and Mr. Mallard "go[es] to the heart of this case." *Id*. ¶ 6. But the affidavit does not suggest or identify—let alone establish—the specific facts upon which this expert might opine and how these facts might rebut the Defendants' assertions. *See Fla. Power & Light Co.*, 893 F.2d at 1316.

14

*Second*, Mr. Esters and Mr. Mallard forfeited any opportunity for further discovery when they did not conduct discovery in accordance with the court's scheduling orders. *See* Doc. 87; Doc. 99. "[A] request for relief under Rule 56(d) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery." 10B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2741 (4th ed.). And the Eleventh Circuit has held that a district court does not abuse its discretion by denying a Rule 56(d) motion when the requesting party failed to conduct discovery in accordance with the court's scheduling order. *See*, *e.g.*, *Outlaw v. Plantation Pipe Line Co.*, No. 21-11787, 2022 WL 2904084, at *5 (11th Cir. July 22, 2022).

*Third*, the premise of the Rule 56(d) motion, *i.e.*, that expert testimony is *required* to refute a qualified immunity defense in excessive force cases, is incorrect. The Eleventh Circuit has held that expert testimony can "assist[] the trier of fact" in excessive force cases "if [the expert testimony] concerns matters that are beyond the understanding of the average lay person." *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 808 (11th Cir. 2017) (cleaned up). But even if expert testimony in excessive force cases may aid a fact finder, there is no obligation to present it. *See id.* at 811–12 (holding that a district court did not abuse its discretion in excluding expert testimony at trial because the expert was not timely

disclosed); *see also Hancock v. Hobbs*, 967 F.2d 462, 468 (11th Cir. 1992) (per curiam) (same).

There is nothing about this case that suggests the rule does not apply. The Defendants rely on their expert report only seven times in their statement of undisputed facts. *See* Doc. 114 ¶¶ 27, 32–33, 35–36, 39, 44. And the evidentiary basis for each of these factual assertions could have come from other evidence in record, including the deposition testimony of Mr. Esters and Mr. Mallard, the Defendants' body camera footage, and the Defendants' testimony. In fact, the court does not rely on the Defendants' expert report in its own facts section. *See supra* at I.A. Accordingly, the motion for further discovery is **DENIED**.

## B. The Defendants' Motion for Summary Judgment

"Qualified immunity protects government officials performing discretionary functions from civil trials . . . and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022) (cleaned up). "To receive qualified immunity, the official must first prove that he was acting within the scope of his discretionary authority when the allegedly unlawful conduct took place." *Hamlet v. Martin Corr. Inst.*, No. 21-11937, 2022 WL 16827438, at *3 (11th Cir. Nov. 9, 2022).

The Defendants assert that they "satisfy their initial burden." Doc. 114 at 14. Mr. Esters and Mr. Mallard did not contest this assertion in their opposition to the Defendants' motion. *See generally* Doc. 121.

The Eleventh Circuit has held that "a governmental actor" engages in a "discretionary function" when engaging in conduct that "do[es] not necessarily involve an element of choice." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (cleaned up). This "inquiry is two-fold." *Id*. Federal courts consider "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id*.

In *Holloman*, the Eleventh Circuit reiterated that the discretionary function inquiry is distinct from the remaining steps in the qualified immunity analysis. *See generally id*. at 1266. The Eleventh Circuit acknowledged that "[o]ne might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power[,]" but the dispositive inquiry in the "first step of the discretionary function test" is whether the government official was "performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Id*.

Alabama law authorizes "any sheriff or other officer acting as sheriff or his deputy" to make "[a]n arrest." Ala. Code § 15-10-1. Although Mr. Esters and Mr. Mallard challenge the constitutionality of their arrest, *see generally* Doc. 61, the ability to arrest falls within the Defendants' legitimate job descriptions, *Holloman*, 370 F.3d at 1266. Accordingly, the first prong of the discretionary function analysis is satisfied.

"After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function—that is, pursuing his job-related goals—in an authorized manner." *Id.* "Each government employee is given only a certain 'arsenal' of powers with which to accomplish h[is] goals." *Id.* at 1267. "For example, it is not within a teacher's official powers to sign h[is] students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism." *Id.*

Alabama law permits officers to use "physical force" when the officer "reasonably believes [the force] to be necessary" to facilitate an arrest. *See Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010) (cleaned up). Although Mr. Esters and Mr. Mallard assert that the Defendants exceeded the scope of this authority, *see generally* Doc. 61, the ability to use force to arrest individuals is

within the "'arsenal' of powers with which" the Defendants may "accomplish [their] goals," *Holloman*, 370 F.3d at 1267. Accordingly, the second prong of the discretionary function test is satisfied.

"Once an official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate (1) that the facts show that the official violated the plaintiff's constitutional rights and (2) that the law clearly established those rights at the time of the alleged misconduct." *Hamlet*, 2022 WL 16827438, at *3 (cleaned up). Federal courts "may undertake these two inquiries in either order." *Barcelona v. Burkes*, No. 21-14285, 2022 WL 15137410, at *2 (11th Cir. Oct. 27, 2022) (per curium) (cleaned up); *accord Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 (11th Cir. 2022) ("Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.") (cleaned up).

### i.   Unlawful Seizure (Count I)

"Under the Fourth Amendment an officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Bradley v. Benton*, 10 F.4th 1232, 1239 (11th Cir. 2021) (cleaned up), *cert. denied*, 142 S. Ct. 1112 (2022). "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Bradley*, 10 F.4th at 1239 (cleaned up). "Still, it

requires a minimal level of objective justification for making the stop." *Id.* (cleaned up). This court "consider[s] whether a particularized and objective basis for the stop existed in light of the totality of the circumstances." *Id.*

Within the qualified immunity framework, an officer is entitled to qualified immunity if he had arguable reasonable suspicion for the stop, even if he was mistaken. *Jackson v. Sauls*, 206 F.3d 1156, 1165–66 (11th Cir. 2000). Arguable reasonable suspicion exists if a reasonable officer under the circumstances could have believed the subject was, or was about to be, involved in criminal activity. *Id.* If the arresting officer had arguable reasonable suspicion of any offense, qualified immunity will apply. *Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007).

The Defendants assert that they had reasonable suspicion to initiate a traffic stop of the vehicle driven by Mr. Esters had an illegal window tint and because Mr. Esters was following another vehicle too closely. *See* Doc. 114 ¶¶ 17, 20; Doc. 111-1 at 10–11; Doc. 110-1 at 8; *see also* Ala. Code §§ 32-5A-89, 32-5C-2. Because the court finds that the Defendants had reasonable suspicion that the vehicle driven by Mr. Mallard had an illegal window tint, the inquiry ends. *See Skop*, 485 F.3d at 1138.

Under Alabama law, "a person shall not operate a motor vehicle . . . under either of the following conditions: (1) [w]ith material or glazing applied or affixed

to the front windshield which reduces light transmission through the front windshield" and "(2) [w]ith material or glazing applied or affixed to the rear windshield or the side or door windows which reduce light transmission through the . . . side windows to less than 32 percent or increase light reflectance to more than 20 percent, with a measurement tolerance of at least 3 percent." Ala. Code § 32-5C-2(a). A limited exception to this prohibition exists for "[a]ny transparent item which is not red or amber in color which is placed on the uppermost six inches of the windshield." *Id*. § 32-5C-3(4).

Mr. Mallard testified that "the windows [of his vehicle were] tinted." Doc. 105-1 at 34. Mr. Mallard further testified that "the window tint place . . . put a strip on the front windshield." *Id*. at 42. He testified that he does not know if the front windshield tint strip exceeds the six inches permitted by Alabama law. *Compare id*., *with* Ala. Code §§ 32-5C-2, 32-5C-3(4).

Deputy Sands testified that he and Deputy Talton "decided to pull the vehicle over" because "[i]t[s window tint] appeared illegal." Doc. 110-1 at 8. Deputy Sands further testified that he "ma[d]e th[e] determination that the window tint appeared illegal" from his own experience and "doing . . . testing [of] window tints with a tint meter." *Id*.

Deputy Talton testified that the "legal reason for the traffic stop" was because of the vehicle's "extremely dark tinted windows." Doc. 111-1 at 10.

Although he conceded that he "would have had to use a tint meter to verify" the vehicle's window tint, he testified that based on his "training and experience" he "can tell . . . what illegal window tint is." *Id.* at 11.

The Defendants articulated a reasonable basis for their "suspicion that criminal activity [wa]s afoot." *Bradley*, 10 F.4th at 1239 (cleaned up). The court does not (and need not) decide if the window tint exceeded the six-inch legal limit imposed by Alabama law because the Defendants are entitled to qualified immunity if they had arguable reasonable suspicion for the stop, even if they were mistaken. *See Jackson*, 206 F.3d at 1165–66. Accordingly, the Defendants are entitled to qualified immunity for the unlawful seizure claim, and summary judgment is **GRANTED** as to that claim.

### ii.   Excessive Force (Count I)

"Under the Fourth Amendment, [federal courts] evaluate [an officer's] use of deadly force based on an objective standard of reasonableness." *Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1298 (11th Cir. 2021). "That standard requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (cleaned up).

Although this court must "construe the facts in the light most favorable to" Mr. Esters and Mr. Mallard, the court "determine[s] reasonableness from the

perspective of a reasonable officer on the scene at the time the events unfolded." *Id*. (cleaned up). This "inquiry does not employ the 20/20 vision of hindsight." *Id*. (cleaned up). "Instead, [federal courts] allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. (cleaned up). Accordingly, binding precedent dictates that "[i]t is reasonable, and therefore constitutionally permissible, for an officer to use deadly force when he has probable cause to believe that his own life is in peril." *Id*. (cleaned up).

The Defendants present arguments based on the deputies' separate roles in this case. *See* Doc. 114 at 16. "*First*," the Defendants assert that "S[er]g[ean]t[] Strickland and Dep[uty] Lloyd are entitled to summary judgment because they never shot their weapons and never exerted any excessive force against" Mr. Esters and Mr. Mallard. *Id*. (emphasis added). Mr. Esters and Mr. Mallard do not contest this assertion in their opposition to the Defendants' motion, *see* Doc. 121, and the evidentiary record supports the Defendants' assertions, *see* Doc. 111-2 at 20; Doc. 109-1 at 10; *see also* Doc. 108-1 at 218, 01:00–02:00; *id*. at 221, 03:00–04:00.

*Second*, the Defendants assert that Deputy Sands, Deputy Talton, and Deputy Patterson are entitled to qualified immunity because their "use of lethal force was objectively reasonable due to the" actions of Mr. Esters and Mr. Mallard

"and the totality of the circumstances facing the Defendants after [Mr. Esters and Mr. Mallard] opened fire from within the vehicle." *Id*. at 16–18. Mr. Esters and Mr. Mallard do not contest this assertion in their opposition to the Defendants' motion. *See* Doc. 121.

As an initial matter, there is a genuine dispute regarding whether Mr. Esters intentionally or accidentally fired his weapon at Deputy Sands and Deputy Talton. *Compare* Doc. 107-1 at 16–17, *with* Doc. 110-1 at 11, *and* Doc. 111-1 at 12. The court does not (and need not) resolve this factual dispute because Mr. Esters concedes that the deputies began shooting after "a firearm went off in [Mr. Mallard's] car." *See* Doc. 107-1 at 16. "Perspective . . . is crucial to the [excessive force] analysis: the only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (cleaned up). Accordingly, the court considers whether the deputies' use of force was reasonable after they heard a firearm discharge from Mr. Mallard's vehicle—even if they were mistaken about whether the firearm discharge was intentional. *See id*.

Officers are "forced to decide in a matter of seconds whether to employ deadly force." *Id*. The Eleventh Circuit has held that officers are not required "in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Id*. (cleaned up). And "[a] police officer is

entitled to continue his use of force until a suspect thought to be armed is fully secured." *Id.* (cleaned up).

Because Deputy Sands and Deputy Talton reasonably perceived that either Mr. Esters or Mr. Mallard (or both) were armed and using deadly force, Deputy Sands and Deputy Talton were entitled to respond accordingly. *See Tillis*, 12 F.4th at 1298; *accord Jean-Baptiste*, 627 F.3d at 821–22. Deputy Patterson was also entitled to use deadly force to secure Mr. Esters based on this perceived threat. *See Jean-Baptiste*, 627 F.3d at 821–22.

Accordingly, the motion for summary judgment is **GRANTED** as to the excessive force claim because the Defendants are entitled to qualified immunity, and Mr. Esters and Mr. Mallard have not established the necessary constitutional violation by them.

### iii. Substantive Due Process (Count II)

The substantive due process claim pleaded by Mr. Esters and Mr. Mallard asserts that their right to due process was violated when the Defendants used force to place them into custody. *See* Doc. 61 ¶ 44. "[T]he Supreme Court has clarified that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Carr v.*

*Tatangelo*, 338 F.3d 1259, 1267 n.15 (11th Cir. 2003), *as amended* (Sept. 29, 2003) (cleaned up and emphasis in original). Accordingly, the court's analysis as to the excessive force claim, *supra* at 22–25, applies to the substantive due process claim, and summary judgment is **GRANTED** as to that claim.

### iv.   Failure To Intervene (Count III)

"An officer can be liable for failing to intervene when another officer uses excessive force." *Baker v. City of Madison*, 67 F.4th 1268, 1281 (11th Cir. 2023) (cleaned up). "Specifically, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Id*. (cleaned up). But when an officer's use of force is not excessive, then the other officers "ha[ve] no obligation to intervene." *Id*. Accordingly, because the Defendants' use of force was not excessive, *see supra* at 22–25, then the Defendants "had no obligation to intervene," *Baker*, 67 F.4th at 1281, and summary judgment is **GRANTED** as to that claim.

### v.   Deliberate Indifference To Serious Medical Needs (Count VI)

"The Due Process Clause of the Fourteenth Amendment requires government officials to provide medical aid to individuals who have been injured during an arrest." *Wade v. Daniels*, 36 F.4th 1318, 1326 (11th Cir. 2022). "To succeed on a claim for deprivation of medical care, a plaintiff must prove (1) the

existence of an objectively serious medical need, and (2) that the officer was deliberately indifferent to that need." *Id.*

The Defendants do not appear to contest that the gunshot wound suffered by Mr. Esters and the broken arm suffered by Mr. Mallard were objectively serious medical needs. *See generally* Doc. 114. Instead, the Defendants assert that they were not deliberately indifferent because they "called for medics immediately after apprehending [Mr. Esters and Mr. Mallard] and securing the scene." *Id.* at 31. Mr. Esters and Mr. Mallard do not contest this assertion in opposition to the Defendants' motion. *See generally* Doc. 121.

"An officer may act with deliberate indifference by delaying the treatment of a serious medical need." *Wade*, 36 F.4th at 1326. "The tolerable length of delay in providing medical attention," including calling for medics, "depends on the nature of the medical need and the reason for the delay." *Id.* (cleaned up). The Eleventh Circuit "ha[s] not drawn a bright-line rule on how long before officers must seek medical care for a suspect that has been shot to constitute deliberate indifference." *Id.* at 1328. The Eleventh Circuit has observed "that a three and half minute delay standing alone may be insufficient to establish deliberate indifference." *Id.* (cleaned up).

Here, approximately two minutes elapsed between when shots were initially fired and when Deputy Talton called for medics to assist Mr. Mallard. *See* Doc.

108-1 at 218, 01:30–03:30. And less than one minute elapsed between when Deputy Patterson fired his initial shots and when Deputy Patterson called for medics to assist Mr. Esters. *See* Doc. 108-1 at 221, 03:05–03:59. The court cannot find that the Defendants delayed in seeking medical attention—let alone for a constitutionally intolerable amount of time. *See Wade*, 36 F.4th at 1326–28.

Accordingly, the motion for summary judgment is **GRANTED** as to the deliberate indifference claim because the Defendants are entitled to qualified immunity, and Mr. Esters and Mr. Mallard have not established the necessary constitutional violation by them.

### vi.   Equal Protection (Count VII)

The equal protection clause of the Fourteenth Amendment requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Mr. Esters and Mr. Mallard must establish that (1) they are similarly situated to other persons who received more favorable treatment and (2) that their discriminatory treatment was based on some constitutionally protected interest, such as race. *See Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001).

Although Mr. Esters and Mr. Mallard "allege[d] that their race (Black) was the motivating factor in the decision(s) of the Defendants . . . to initiate a traffic stop of [their] vehicle," Doc. 61 ¶ 124, they have offered no evidence to support

28

this assertion. To survive summary judgment, Mr. Esters and Mr. Mallard must present "some evidence of racially disproportionate arrests compared to the actual incidence of violations by race," in order for this court to "infer[] racially selective law enforcement." *Swint v. City of Wadley*, 51 F.3d 988, 1000 (11th Cir. 1995) (holding that "the district court erred in denying" summary judgment to a law enforcement officer when such evidence had not been presented). Because Mr. Esters and Mr. Mallard have offered no such evidence, summary judgment is **GRANTED** as to that claim.

### vii.    Tort of Outrage (Count VIII)

Because the court has granted summary judgment for all federal law claims, only the tort of outrage claims arising under Alabama law remain. But a "district court[] may decline to exercise supplemental jurisdiction" where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court's discretion to do this is "broad." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) ("A district court . . . will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed."); *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (observing that after summary judgment has been granted on all federal law claims, the district court has discretion to decline to exercise supplemental jurisdiction over the state law claims).

"Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are" resolved. *Silas*, 55 F.4th at 866; *accord Hicks*, 422 F.3d at 1255 n.8. In the Defendants' motion, the defendants raise a defense particular to Alabama law and allegedly available to the Defendants under the Alabama Constitution. *See*, *e.g.*, Doc. 114 at 34–36. Accordingly, the court finds "that considerations of judicial economy, convenience, fairness, and comity" and federalism caution against this court retaining jurisdiction to resolve such issues, *see Silas*, 55 F.4th at 866 (cleaned up), and those claims are **DISMISSED WITHOUT PREJUDICE**.

## IV.   CONCLUSION

For the foregoing reasons, the motion for further discovery is **DENIED**. The motion for summary judgment is **GRANTED** as to the claims that arise under federal law. The court will enter a separate order consistent with this Memorandum Opinion. Having entered judgment in the Defendants' favor for all claims arising under this court's original jurisdiction, the court declines to exercise supplemental jurisdiction over the state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this 13th day of July, 2023.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE